Cox *vs.* Coleman's adm'r.

ERROR TO FAYETTE CIRCUIT.

CHANCERY. | 13bm451
104 484
Case 26. | 13bm451
e118 849

Chief Justice HISE delivered the opinion of the court.  January 6.

1. A husband, in 1842, conveyed to a trustee certain slaves and other personal property for the separate use of the wife, and for the benefit of her issue. The wife died without issue, leaving the husband and her father surviving—held, that the husband was entitled to the slaves, &c., to the exclusion of the father as heir of the daughter. (*Brown, &c. v. Alden, &c.* 13 *B. Monroe; Allen v. Everett,* 12 *Ib.* 371; *Payne* v. *Payne, &c.* 11 *Ib.* 139.)

2. Previously to the act of 1846, the husband, upon his marriage, was *entitled,* absolutely, to all the slaves, personal estate, and choses in action in possession of the wife, and such as he might reduce to possession during the coverture.

3. The husband, previously to the act of 1846, was entitled, as the administrator or distributee of his wife's estate, to all the choses in action and vested rights in the personal estate and slaves belonging to her before the marriage, or coming to her during the marriage, which he was not bound to distribute. These rights are now subject to the provisions of the act of 1846.

4. Slaves and personal property conveyed to a trustee for the separate use of the wife, on her death vest absolutely in the husband, unless otherwise directed by the terms of the deed.

5. Slaves owned by the wife before marriage, as well as such as accrue to her during her coverture, vest absolutely in the husband.

Letitia D. Coleman being entitled to some slaves and other property, intermarried with Joseph F. Philips, who thereupon conveyed all the estate which he acquired by his marriage to Austin P. Cox, as trustee, for the sole and individual use of his wife Letitia, and for the benefit of her issue, giving to the wife the full power to direct, in writing, the sale and disposition of the separate trust property, and providing that the proceeds in money, &c., arising from such sales and disposition of it, directed by her, should be paid over to her to be applied to her own use at her own discretion. This deed of trust was made and dated on the 18th of January, 1842. Letitia D. Coleman, then the wife of J. F. Philips, subsequently died without issue, leaving her husband and her father, James Coleman, surviving. James Coleman, the father of Letitia having also died some time after the death of his daughter, his personal representative, R.

Case stated.

1. A husband, in 1842, conveyed to a trustee certain slaves and other personal property for the separate use of the wife,

Cox
*vs.*
COLEMAN'S
ADM'R.

and for the benefit of her issue. The wife died without issue, leaving the husband and her father surviving—held, that the husband was entitled to the slaves, &c., to the exclusion of the father as heir of the daughter.— (*Brown, &c.* v. *Alden, &c.* 13 *B. Monroe; Allen* v. *Everett,* 12 *Ib.* 371; *Payne* v. *Payne, &c.* 11 *Ib.* 139.)

2. Previously to the act of 1846, the husband, upon his marriage was entitled, absolutely, to all the slaves, personal estate, and choses in action in possession of the wife, and such as he might reduce to possession during the coverture.

3. The husband, previously to the act of 1846, was entitled, as the administrator or distributee of his wife's estate, to all the choses in action and vested rights in the personal estate and slaves belonging to her before the marriage, or com-

Pindell, sued in chancery Austin P. Cox, the trustee, to recover the property held by him in trust as above stated, claiming it as belonging to the estate of his intestate, James Coleman, deceased, who was heir at law of Letitia D. Philips, his daughter, who, as stated, died before her father, without issue. And the only question presented is, whether, upon the death of Mrs. Philips, this trust estate, consisting of slaves, other personal property, and choses in action, passed and belonged, by law, to the surviving father as her heir, or to her husband, either as administrator or survivor.

From the reasoning urged, authorities cited, and conclusions attained, in the cases of *Brown and others* v. *Alden & Pope,* 13 *B. Monroe;* the case of *Allen and Everett,* 12 *B. Monroe,* 371; and the case of *Payne* v. *Payne, &c.* 11 *B. Monroe,* 139, are deduced as corollaries, the following legal propositions:

1. That before the act of February, 1846, the husband upon his marriage becomes entitled absolutely to all the personal estate, as well as slaves, belonging to his wife, in possession or reduced to possession during coverture, and, being so entitled, the property continues his after his wife's death.

2. That the husband, either as distributee of the wife's estate or as her administrator if he survive her, is entitled to all the choses in action and vested rights to personal estate and *slaves,* belonging to the wife before her marriage or coming to her during her marriage, and when reduced to his possession as administrator he is not bound to distribute them, but may appropriate them to his own use, subject now, however, to the provisions of the act of 1846.

3. That the post mortem legal disposition of the wife's separate estate, vested in a trustee for her sole and separate use and benefit, if not otherwise controlled by the provisions of the deed, and not charged or disposed of by the wife in pursuance of her legal power as expressed in the deed, or arising from the nature of the estate, is governed and controlled by the same rules which regulate the succession of the

wife's absolute property and rights of property. Hence if the wife, before said act of 1846 was passed, had a separate absolute estate in slaves, personalty, and choses in action, vested in a trustee for her use by a deed which does not itself direct and control the succession, or provide for the continuance of the trust after the wife's death, then, upon her death, the trust, by operation of law, ceases, and the personal property, including the slaves and choses in action and all rights of property, vest absolutely in the husband as survivor, or as administrator of the wife's estate. But if, by the terms of the trust, it continues the legal title in the original trustee or trustees, their successors or heirs, and no disposition be made of the wife's use and beneficial equitable interest in the trust estate, after her death, the husband, either as distributee or survivor, or as administrator, will succeed to all the equitable rights and interests of the wife, and the heirs of the wife do not inherit, and cannot in any event, in such cases, recover such estate from the surviving husband or his assignees. So the law has been repeatedly adjudged and settled, and as settled is not regarded as in conflict with the twenty-eighth section of the act of 1798, which directs that slaves "shall descend to the heirs and widows of persons departing this life, as lands are directed to descend by the 'act directing the course of descent.'" For by the thirty-fourth section of the same act, of 1798, the absolute right to slaves of the wife, owned by her before her marriage, or accruing to her during coverture, are vested completely in the husband; so that, upon her death, her husband surviving, she would, in fact, not be the owner of any slave or slaves which could descend to her heirs, for by operation of law all her right and title to such slaves had vested in her husband; and it is manifest that the said twenty-eighth section did not allow, contemplate, or design the descent of slaves, or of any right or title thereto, either in possession or action, legal or equitable, from a married woman dying in the lifetime of her hus-

*Margin notes:*

Cox
vs.
COLEMAN'S
ADM'R.

ing to her during the marriage, which he was not bound to distribute, These rights are now subject to the provisions of the act of 1846.

4. Slaves and personal property conveyed to a trustee for the separate use of the wife, on her death vest absolutely in the husband, unless otherwise directed by the terms of the deed.

5. Slaves owned by the wife before marriage, as well as such as accrue to her during her coverture, vest absolutely in the husband.

band, as is manifest from the language of that section, which provides that slaves "shall descend to the heirs and *widows* of persons departing this life ;" of course a *feme covert* dying leaves no *widow*, and in respect to slaves can have no heirs to inherit, inasmuch as the husband, by the thirty-fourth section referred to above, is vested with the absolute right to all the wife's slaves ; and inasmuch as the major includes the minor interest, it would be a narrow and unreasonable construction of the thirty-fourth section, and an unauthorized restriction of its effect and operation, to conclude that although it vested the absolute right to the wife's slaves in the husband in possession, yet that it did not pass the wife's vested rights in remainder or reversion, or her equitable interest in slaves, in the husband. That such rights and interest do pass to the husband upon the wife's death, as her survivor or administrator, has been repeatedly determined by this court. (*See the case of Pattie, and others*, v. *Pattie, Hall, &c.* 2 *B. Monroe*, 461 ; *Pinckard, &c.* v. *Smith and wife*, 6 *Littell*, 336.) And several other cases might be cited in which the same principle is settled. The case under consideration is similar to that of *Brown, &c.* v. *Alden & Pope*, and it is not deemed necessary to repeat or add to the argument presented in that case, or to cite other cases in support of the authorities there drawn in aid of the conclusion, that the separate trust estate of the wife, with respect to its succession, should be governed by the same rules which control the succession of the slaves and other personal estate of the wife not subject to distribution to her heirs, where the husband survives. The deed of trust in this case is dated in 1842, and of course the act of February, 1846, has no application, and the question involved is settled in accordance with the law as it stood before that act was passed ; but even under that act the husband would take a life estate in the slaves of the wife after her death.

Wherefore, without noticing the other errors assigned, as the decree in this case decides erroneously that the administrator of James Coleman is entitled to the benefit of the judgment in detinue recovered by Cox for the slaves which composed a part of Mrs. Philips' separate estate in her lifetime, instead of her surviving husband, that decree is reversed and cause remanded with direction to dismiss the complainant's bill.

*Robertson* and *Harlan*, for plaintiff; *Pindell*, for defendant.